UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| CHAOYI WU, | ) |
|         Petitioner, | ) ) ) |
| v. | ) ) )   1:26-cv-00090-SDN |
| DERRICK STAMPER, *Chief Patrol Agent,* *Houlton Sector, U.S. Border Patrol,* et al., | ) ) ) ) ) ) |
|         Respondents. | ) |

## **ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Mr. Wu's petition for a writ of habeas corpus requests this Court immediately release Mr. Wu because he is not subject to mandatory detention under 8 U.S.C. § 1225(b). Respondents contend Mr. Wu is subject to mandatory detention as a parolee whose parole has expired under 8 U.S.C. § 1182(d)(5)(A). After considering the parties' arguments, the Court **GRANTS** Mr. Wu's petition for a writ of habeas corpus.

## BACKGROUND

On February 20, 2026, Petitioner Chaoyi Wu filed a verified petition for a writ of habeas corpus under 28 U.S.C. § 2241 and a motion for a temporary restraining order ("TRO"). ECF Nos. 1, 3.

According to the verified petition, Mr. Wu is a Chinese national who entered the U.S. near Hidalgo, Texas, in early November 2021. ECF No. 1 at 1; ECF No. 8 at 3. On November 4, 2021, he was placed into expedited removal proceedings and ordered removed. *Id.* at 3–4; ECF No. 1-1 at 2. On November 12, 2021, the Government paroled him into the country under 8 U.S.C. § 212(d)(5)(A) for humanitarian purposes related to

1

the Covid-19 pandemic. ECF No. 1 at 7; ECF No. 1-1 at 3; ECF No. 8-1 at 4. Mr. Wu's parole was valid for one year, until November 12, 2022, at which point it automatically terminated. ECF No. 1-1 at 3. As one of the conditions of his parole, he was required to notify Immigration and Customs Enforcement ("ICE") of any changes in address from his original home address in Staten Island, New York. *Id*. at 4. Following the expiration of his parole on November 12, 2022, the Government took no action to re-detain Mr. Wu for over three years. During this period, Mr. Wu built a life in the United States, married an American citizen, and filed an asylum claim which remains pending. ECF No. 16 at 7.

On February 18, 2026, Mr. Wu was among a group of individuals at a home in South Paris, Maine, who called emergency services to assist a person attempting suicide. ECF No. 11 at 2. Upon arrival, local police requested Mr. Wu's identification. ECF No. 1 at 5. Despite the life-saving nature of the call, once Mr. Wu's noncitizen status was disclosed, police chose to contact U.S. Border Patrol ("USBP"). *Id*. USBP subsequently took Mr. Wu into custody, characterizing him as a "flight risk" based on an alleged failure to update his address.[1] ECF No. 1 at 9. This assessment, however, relied on a purported statement from

---

[1] While this Court does not oversee the Executive Branch's immigration enforcement priorities, those priorities provide necessary context for the discretionary nature of this detention and the Government's interest in it, matters relevant to the *Mathews* due process factors discussed below. Recent Department of Homeland Security ("DHS") guidance emphasizes focusing enforcement on individuals who pose a tangible threat to public safety. *See* DHS Press Release, *Making America Safe Again: The State of DHS* (Feb. 24, 2026), https://www.dhs.gov/news/2026/02/24/making-america-safe-again-state-dhs-under-president-trump-and-secretary-noem [https://perma.cc/Z2KK-XJDV] (characterizing DHS policies as those that promote "the safety and security of American citizens first and foremost" and that federal resources are prioritized to remove "dangerous illegal" noncitizens). Mr. Wu's history in the United States does not reflect this stated concern; to the contrary, his conduct suggests a commitment to civic responsibility and the preservation of life. Furthermore, the decision to re-detain a noncitizen at the scene of an emergency call risks a "chilling effect" that discourages others from seeking life-saving aid. *See* Sarah Rahal & Jason Laughlin, *Immigrant Families Are Shying Away from Medical Care*, Boston Globe (Jan. 12, 2026), https://www.bostonglobe.com/2026/01/12/metro/immigrant-ice-hospital-appointment-massachusetts [https://perma.cc/L6C8-9RA3] (reporting that stepped-up enforcement has led families to forgo emergency care even in critical situations); Chinwe Anyanwu, *The Chilling Effect of ICE Raids on Emergency Medicine*, ACEP Now (Jan. 10, 2026), https://www.acepnow.com/article/the-chilling-effect-of-ice-raids-on-emergency-medicine [https://perma.cc/BY3E-HWP3] (noting that enforcement during

Mr. Wu that he "liv[ed]" at the South Paris residence—a statement obtained without the assistance of a translator despite Mr. Wu's limited English proficiency. *See* ECF No. 8-1 at 3.

Later that day, ICE issued a warrant of removal/deportation, Form I-205,[2] against Mr. Wu. ECF No. 8-2. He currently is in the custody of U.S. Customs and Border Protection ("CBP") at Fort Fairfield Station in Maine. ECF No. 8 at 1.

On February 26, 2026, the Court held oral argument on Mr. Wu's petition and ordered supplemental briefing. ECF No. 12. Mr. Wu argues his detention is unlawful under the Due Process Clause of the Fifth Amendment because he has a protected liberty interest not to be re-detained without notice and an opportunity to be heard. ECF No. 16 at 13. Respondents contend Mr. Wu's detention is proper because he became subject to mandatory detention under 8 U.S.C. § 1225 when his parole automatically terminated in 2022. ECF No. 8 at 8–11. Alternatively, Respondents assert he is validly mandatorily detained under 8 U.S.C. § 1231 pursuant to his final order of removal, which requires a ninety-day mandatory detention after a final order of removal is issued. *Id*. at 11–12. In his reply and supplemental briefing, Petitioner argues his detention is only valid under 8 U.S.C. § 1231, which would entitle him to immediate release because he has an

---

medical emergencies leads to "disruptions of care" and "secondary injuries from delayed care"). This outcome is fundamentally at odds with the public interest, as it creates a risk to public safety by incentivizing individuals to avoid emergency services. Under these circumstances, the decision to re-detain an individual with no criminal record departs from, and likely counter-produces, the asserted focus on public safety and security.

[2] The I-205 warrant is not factually correct; it asserts Mr. Wu is removable based on a final order from an immigration judge, whereas his actual expedited removal order was issued by a CBP agent at the border. *See* ECF No. 11 at 2; ECF No. 8-2. The parties agree, however, that both the warrant and its errors are irrelevant to the Court's analysis. *See Rodrigues De Oliveira v. Joyce*, No. 2:25-CV-00291, 2025 WL 1826118, at *4 (D. Me. July 2, 2025) (noting the similar I-200 warrant "is a fascinating tool that is all but self-executing, issued to ICE agents by ICE agents without a neutral third-party to review its integrity").

established liberty interest that arose from his previous release on parole. ECF No. 11 at 5; ECF No. 16 at 14.

## ANALYSIS

Under 28 U.S.C. § 2241, district courts possess the primary authority to adjudicate habeas corpus challenges to the federal detention of noncitizens. *Rasul v. Bush*, 542 U.S. 466, 483–84 (2004); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("We note at the outset that the primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear these cases." (citing 28 U.S.C. § 2241(c)(3))). "The burden of proof of showing deprivation of rights leading to unlawful detention is on the petitioner." *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009).

### I. Applicable Statutory Provision

Under 8 U.S.C. § 1225, an "applicant[] for admission" is defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Applicants for admission "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (plurality). Relevant here is section 1225(b)(2).[3] Under this section, if an immigration officer inspects a noncitizen at the border and it is undisputed "that a[] [noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted," section 1225(b)(2) requires that the noncitizen be detained for removal

---

[3] The final order of removal states Mr. Wu was expedited removed under section 1225(b)(1). *See* ECF No. 1-1 at 2; 8 U.S.C. § 1225(b)(1)(A)(i) ("the officer shall order the [noncitizen] removed from the United States without further hearing or review"). But the parties' briefing indicates Mr. Wu should be evaluated under section 1225(b)(2), which applies to noncitizens who have been paroled. *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(II) (permitting the Attorney General to designate for expedited removal only those noncitizens who have not been admitted or paroled and have not been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"). The Court assumes for the purposes of this Order that Mr. Wu is subject to section 1225(b)(2).

4

proceedings under section 1229a. 8 U.S.C. § 1225(b)(2)(A). The parties do not dispute that Mr. Wu was, at the time he entered the United States, an applicant for admission subject to mandatory detention under section 1225(b)(2). *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020).

Mr. Wu's notice of parole states he was paroled from immigration custody pursuant to section 212(d)(5)(A) of the Immigration and Nationality Act ("INA"). ECF No. 1-1 at 3. Section 212(d)(5)(A) empowers the Secretary of Homeland Security to "parole [a noncitizen] into the United States temporarily under such conditions as [s]he may prescribe." 8 U.S.C. § 1182(d)(5)(A); *see Martinez v. Hyde*, 792 F. Supp. 3d 211, 216 (D. Mass. 2025). Immigration parole employs a so-called "legal fiction" where noncitizens are physically located inside the country but are "'treated' for due process purposes 'as if stopped at the border.'" *Thuraissigiam*, 591 U.S. 103 at 139 (quoting *Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 215 (1953)); *see* 8 U.S.C. § 1182(d)(5)(A) ("[P]arole of such [noncitizen] shall not be regarded as an admission of the [noncitizen] . . . ."). A noncitizen ensnared within this legal fiction has "only those rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 591 U.S. 103 at 140.

The core of this dispute, however, is not whether the Government could have detained Mr. Wu in 2021, but whether it may summarily re-detain him in 2026 after a four-year period of law-abiding, peaceful presence in the country.

As Petitioner points out, *Thuraissigiam* is distinguished in several material respects. There, the noncitizen was "apprehended just 25 yards from the border," had not effected a full entry into the country, and was never paroled or conditionally released. *Id.* at 107. "[O]ur immigration laws have long made a distinction between those [noncitizens] who have come to our shores seeking admission . . . and those who are within the United

5

States after an entry, irrespective of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958).

Furthermore, the Supreme Court has recognized that noncitizens "who have established connections in this country have due process rights." *Thuraissigiam*, 591 U.S. at 107; *see also Mezei*, 345 U.S. at 212 (recognizing that noncitizens "who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to . . . due process of law"). In sum, "[l]iberty interests may spring from lives lived, connections fostered, and promises made or implied." *Destino v. FCI Berlin, Warden*, No. 25-CV-374, 2025 WL 4010424, at *7 (D.N.H. Dec. 24, 2025).

Mr. Wu's parole automatically terminated on November 12, 2022, pursuant to 8 C.F.R. § 212.5(e). *See* 8 C.F.R. § 212.5(e) ("Parole shall be automatically terminated without written notice . . . at the expiration of the time for which parole was authorized."). Upon termination, the noncitizen "shall be restored to the status that he or she had at the time of parole." 8 C.F.R. § 212.5(e)(2)(i). That means the noncitizen "shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). The regulation additionally provides that "[a]ny further inspection or hearing shall be conducted under section 235 [8 U.S.C. § 1225]" of the INA and "[i]f the exclusion, deportation, or removal order cannot be executed within a reasonable time, the [noncitizen] shall again be released on parole unless in the opinion of the [DHS official] the public interest requires that the [noncitizen] be continued in custody." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 C.F.R. § 1.2 ("An arriving [noncitizen] remains an arriving [noncitizen] even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked.").

6

The Government contends the automatic expiration of Mr. Wu's parole returned him to the status under which he was previously held—section 1225(b)(2)'s mandatory detention framework. ECF No. 8 at 10. As such, according to the Government, Mr. Wu's parole necessitates his mandatory detention under section 1225(b)(2). Petitioner argues he is no longer subject to the section 1225(b) framework because he possesses a protected liberty interest in his freedom, and that any authority for his detention must come instead from 8 U.S.C. § 1231. ECF No. 16 at 10. Answering this question requires the Court to determine if Mr. Wu is "seeking admission" such that he is subject to mandatory detention under section 1225(b)(2)(A).

As Respondents see it, Mr. Wu should be treated as if he were still stopped at the border, having never effected entry into the country. *See* 8 U.S.C. § 1182(d)(5)(A). As other courts have explained, however, the phrase "seeking admission" in section 1225(b) "plainly refer[s] to a process that occurs upon physical entry at the border, not an interminable implicit statutory status." *Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 90 (D.D.C. 2025) (quotation modified).

By being paroled into the interior of the country, Mr. Wu was transformed from an individual "seeking admission" into an individual residing in this country who is no longer "arriving." *See, e.g.*, *Qasemi v. Francis*, No. 25-CV-10029, 2025 WL 3654098, at *6 (S.D.N.Y. Dec. 17, 2025) ("It would try any plain understanding of the term arrival to classify an individual like [petitioner] who has lived and worked in the United States for over a year prior to his re-detention as an arriving [noncitizen]."); *Coal. for Humane Immigrant Rts.*, 805 F. Supp. 3d at 90–91 ("[A] noncitizen 'arriving' in the United States would be one who is in the process of reaching his or her destination (the United States) and making an appearance here. It would not naturally be read to refer to someone who

7

previously reached the United States via a port of entry, underwent inspection at that port of entry, and then was paroled into the United States (beyond their original destination) for an indefinite period of time."); *Walizada v. Trump*, No. 25-CV-00768, 2025 WL 3551972, at *12 (D. Vt. Dec. 11, 2025) (finding that although petitioner "was, at one time, an 'arriving [noncitizen]' who was paroled into the United States," the expiration of his parole did not revert him back to being an applicant for admission). This interpretation comports with this Court's prior reasoning in *Chogllo Chafla* that section 1225(b) is inapplicable to noncitizens who have resided continuously in the country for more than two years. *Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025).

While the expiration of humanitarian parole returns a noncitizen to the "custody from which he was paroled," it does not function as a temporal loophole that requires summary *physical* custody years after the fact. 8 U.S.C. § 1182(d)(5)(A); *see Aviles-Mena v. Kaiser*, No. 25-CV-06783, 2025 WL 2578215, at *4 (N.D. Cal. Sept. 5, 2025) ("[T]ermination of parole does not generally require treating noncitizens as if they had never been paroled in the first place."). Instead, a more judicious reading of section 1182(d)(5)(A) suggests that a noncitizen whose parole has expired should be treated similarly to the "vast majority of undocumented immigrants currently living in this country who are not subjected to expedited removal." *Rodriguez-Acurio v. Almodovar*, No. 25-CV-6065, 2025 WL 3314420, at *17 (E.D.N.Y. Nov. 28, 2025). Once parole is revoked, the law requires that the individual be treated "in the same manner as that of any other applicant for admission." *Clark v. Martinez*, 543 U.S. 371, 385 (2005) (emphasis removed). When a final order of removal already has been issued, that "manner" is governed specifically by the post-ninety-day removal-period provisions of 8 U.S.C. § 1231. *See id.* at 386.

Respondents' own actions support this interpretation. If, as the Government now contends, section 1182(d)(5)(A) mandated Mr. Wu's immediate return to custody upon expiration of his parole in 2022, it can provide no explanation for the three-year delay in his arrest. During that interval, Mr. Wu did not live in hiding; indeed, he actively engaged with the immigration system by applying for asylum. Furthermore, the Government's decision to issue a new warrant following Mr. Wu's arrest at the scene of the 911 call, *see* ECF No. 8-2, indicates an understanding that he is subject to discretionary, rather than mandatory, detention, *see* 8 U.S.C. § 1225(b)(2) (requiring mandatory detention without issuance of a warrant). Accordingly, because Mr. Wu is not subject to the mandatory detention framework of section 1225(b), the Court analyzes his current custody through the lens of 8 U.S.C. § 1231.

Section 1231, which governs noncitizens subject to a final order of removal, mandates detention of the noncitizen during the ninety-day removal period. *See* 8 U.S.C. § 1231(a)(2)(A) ("During the removal period, the Attorney General shall detain the [noncitizen]. Under no circumstance during the removal period shall the Attorney General release a[] [noncitizen] who has been found inadmissible . . . ."); 8 U.S.C. § 1231(a)(1)(A) (When a noncitizen is ordered removed, "the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days . . . ."). But the Government's authority to detain a noncitizen under this section is not indefinite. Petitioner argues that he is entitled to immediate release for two reasons: (1) having been released into the community for four years, he has developed a protected liberty interest in his freedom from restraint, ECF No. 16 at 12–13; and (2) the statutory ninety-day removal period prescribed by section 1231 expired long ago, in 2022, *id.* at 14. The Court finds this argument legally sound.

Numerous district courts have recognized that an individual possesses an imputed liberty interest once the Government has exercised its discretion to release them into the community. As a court in the Eastern District of California recently observed, the initial decision to release an individual creates "an implicit promise" that the individual's liberty will be revoked only upon a failure to comply with the conditions of release. *Omer G. G. v. Kaiser*, No. 25-CV-01471, 2025 WL 3254999, at *6 (E.D. Cal. Nov. 22, 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)); *see Ji v. Noem*, No. 1:26-CV-01186, 2026 WL 485287, at *2 (E.D. Cal. Feb. 20, 2026) ("To the extent Respondents argue that Petitioner shall 'return or be returned to the custody from which he was paroled,' based on this automatic termination, the Court disagrees because the Government created a liberty interest in allowing Petitioner's continued release despite the automatic termination."); *Piurbeev v. Rose*, No. CV 26-910, 2026 WL 499907, at *3 (E.D. Pa. Feb. 23, 2026) ("[Petitioner] asserts, and the Court agrees, that the grant of discretionary parole and [petitioner's] release from the CBP custody in January 2023 makes it so that he is no longer 'seeking admission' within the meaning of § 1225(b). He therefore cannot be detained absent a bond hearing."); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) ("When he was released from his initial detention on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause.").

The law compels the same conclusion here: the grant of discretionary parole in 2021 established a protected liberty interest for Mr. Wu that persisted beyond the parole's automatic termination. Having "passed through our gates" and lived as a member of the community for over four years, Mr. Wu is no longer "seeking admission" in the sense of a

stranger at the border; he is an individual entitled to the full protections of the Due Process Clause. *See Mezei*, 345 U.S. at 212; *Wamsley*, 800 F. Supp. 3d at 1136.

Furthermore, the statutory ninety-day removal clock has long since expired. The statute itself provides that the removal period begins on the latest of the following: "[t]he date the order of removal becomes administratively final"; "if a court orders a stay of the removal of the [noncitizen], the date of the court's final order"; or "[i]f the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B). Because the latter two subdivisions are inapplicable here, the ninety-day removal period began on the date Mr. Wu's removal order became final: November 4, 2021. 8 U.S.C. § 1231(a)(1)(B); *see* ECF No. 1-1 at 2. Because he was not removed within that window, any subsequent detention must be discretionary rather than mandatory. *See Hall v. Nessinger*, No. 25-CV-667, 2026 WL 18583, at *1 (D.R.I. Jan. 2, 2026); *Garcia-Aleman v. Thompson*, No. SA-25-CV-886, 2025 WL 3534806, at *3 (W.D. Tex. Nov. 24, 2025), *report and recommendation adopted*, 2025 WL 3532179 (W.D. Tex. Dec. 9, 2025) (finding that when a noncitizen "was previously detained, then released on supervised release, . . . his 90-day removal period has long expired"). Consequently, the Government's authority to detain Mr. Wu, if it exists at all, must be analyzed under section 1231.

## II. Due Process: The *Mathews v. Eldridge* Balancing Test

The Due Process Clause prohibits the deprivation of life, liberty, or property without due process of law. U.S. Const. amend. V. "'It is well established that the Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). To determine if a due process violation has occurred,

the Court applies the three-factor test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 27–28 (1st Cir. 2021). The three factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 28 (quoting *Mathews*, 424 U.S. at 335).

First, the Court finds Mr. Wu has amply demonstrated an infringement of his rights. *See Chogllo Chafla*, 804 F. Supp. 3d at 262–64. Mr. Wu asserts "the most elemental of liberty interests"—the right to be free from physical restraint. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). This interest is heightened by the fact that the Government previously found him to be neither a flight risk nor a danger to the community when granting his initial parole. *See Chogllo Chafla*, 804 F. Supp. 3d at 262; ECF No. 1-1 at 3; 8 C.F.R. § 212.5(b). Second, the risk of erroneous deprivation here is substantial. The Government's current justification for detention—an alleged failure to update a home address—is based on a contested police report involving an individual with limited English proficiency who was provided no translator. *See* ECF No. 8-1 at 3. In the absence of a hearing, the Government risks permanently depriving an individual of liberty based on a linguistic misunderstanding occurring at the scene of a life-saving emergency. The "probable value . . . of additional or substitute procedural safeguards" in this case is large. *Mathews*, 424 U.S. at 335. Finally, the Government's interest in detaining Mr. Wu, a Good Samaritan with no criminal record and deep community ties, is minimal. As explained above, the "unnecessary detention" of noncitizens imposes significant societal

costs, including, here, the erosion of public trust in emergency services and the consequent chilling effect on those in need of aid. *See Chogllo Chafla*, 804 F. Supp. 3d at 263–64; *Hernandez-Lara*, 10 F.4th at 33 (noting that "unnecessary detention" of noncitizens "imposes substantial societal costs"). Accordingly, all three *Mathews* factors weigh in Mr. Wu's favor.

## CONCLUSION

Upon a finding of a constitutional violation, a district court "may" grant a writ of habeas corpus and "dispose of the matter as law and justice require." 28 U.S.C. §§ 2241(a), 2243. Release from detention is the "typical remedy" for "unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). Here, Mr. Wu's immediate release is appropriate to remedy his unconstitutional detention.

Petitioner's verified petition for a writ of habeas corpus is **GRANTED**. ECF No. 1. The Court **ORDERS** Petitioner's release from detention on or around 10 p.m. on March 4, 2026, subject to any existing conditions established by his humanitarian parole. The Court further **ORDERS** the Respondents not to re-detain Petitioner absent a showing of changed circumstances and an opportunity to be heard. This Order does not prevent the Respondents from pursuing removal efforts in accordance with the law.

**SO ORDERED.**

Dated this 4th day of March, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**